The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CLAUDE A. REESE, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>  v.<br><br>JOHN BROWNE and ROBERT A. MALONE,<br><br>          Defendants. | No. 08-1008 MJP<br><br>**DEFENDANT BPXA'S MOTION FOR RECONSIDERATION**<br><br>Note for Motion Calendar:  April 3, 2009<br><br>ORAL ARGUMENT REQUESTED |

John L. Warden
Richard C. Pepperman, II
Steven J. Purcell
Diane L. McGimsey
Gerald L. Black, Jr.
Elizabeth K. Ehrlich
(Admitted *Pro Hac Vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000 (tel.)
(212) 558-3588 (fax)

David C. Lundsgaard, WSBA #25448
GRAHAM & DUNN PC
Pier 70
2801 Alaskan Way, Suite 300
Seattle, Washington  98121
(206) 340-9691 (tel.)
(206) 340-9599 (fax)

*Attorneys for Defendants*

DEFENDANT BPXA'S MOTION FOR
RECONSIDERATION

**GRAHAM & DUNN** PC
PIER 70, 2801 ALASKAN WAY ~ SUITE 300
SEATTLE, WASHINGTON  98121-1128
(206) 624-8300/Fax: (206) 340-9599

No. 08-1008 MJP

Pursuant to Local Rule 7(h)(1), Defendant BP Exploration (Alaska) Inc. ("BPXA") respectfully requests that the Court reconsider two rulings in its Order on Motion to Dismiss that sustained the sufficiency of Plaintiffs' § 10(b) claim against BPXA.

Motions for reconsideration are appropriate to "present the district court with newly discovered evidence or demonstrate that the district court committed clear error or manifest injustice." *Mustafa* v. *Clark County Sch. Dist.*, 157 F.3d 1169, 1178-79 (9th Cir. 1998). BPXA respectfully submits that reconsideration is appropriate here on two separate grounds, *either* of which would provide a basis to dismiss the entire case.

First, the Court concluded that the attachment of a contract called the Overriding Royalty Conveyance to the periodic SEC filings of the BP Prudhoe Bay Royalty Trust (the "Trust") constituted an ongoing representation by BPXA to BP p.l.c. shareholders that BPXA was complying with its obligation under the contract to operate Prudhoe Bay according to a "Prudent Operator Standard." In accepting Plaintiffs' assertion that the Trust's attachment of this contract to its SEC filings constituted a representation by BPXA, the Court—which did not have the benefit of the fullest possible briefing on this issue—may have overlooked certain facts—most importantly, that the SEC filings in question are those of the Trust, not BPXA.

Second, the Court held that BPXA's agreement to plead guilty to a single misdemeanor violation of the Clean Water Act was sufficient to plead scienter. This Plea Agreement, however, was predicated on a mental state of negligence. Under Ninth Circuit law, "[n]egligence, even gross negligence, does not rise to the level of the nefarious mental state necessary to constitute securities fraud under the PSLRA." *DSAM Global Value Fund* v. *Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002).

DEFENDANT'S MOTION FOR
RECONSIDERATION -- 1

No. C08-1008 MJP

**GRAHAM & DUNN** PC
PIER 70, 2801 ALASKAN WAY ~ SUITE 300
SEATTLE, WASHINGTON  98121-1128
(206) 624-8300/Fax: (206) 340-9599

I.  **THE TRUST'S ATTACHMENT TO ITS SEC FILINGS OF A CONTRACT TO WHICH BPXA IS A PARTY IS NOT A REPRESENTATION BY BPXA BECAUSE BPXA HAS NOT "SPOKEN."**

Plaintiffs allege that the Trust's attachment to its SEC filings of a 1989 contract between The Standard Oil Company ("Standard Oil") and BPXA, whereby BPXA agreed, among many other things, to operate Prudhoe Bay according to a so-called "Prudent Operator Standard," constituted an ongoing representation *by BPXA* that it was complying with that standard. (Compl. ¶¶ 134-136.) Although the Court recognized that a contractual provision by itself does not constitute a representation that can be the basis for a § 10(b) claim, it held that "the filing of the agreement as a public document in compliance with SEC requirements renders it a representation that investors may rightly rely on." (Order at 7.) The Court's Order, however, blurs the identity of the speaker and suggests that the Court may have believed that BPXA itself either filed the contract with the SEC or directed the Trust to do so. The Order refers to "BPXA's representation (via their public SEC filings) that their operation of the OTLs was consonant with the Prudent Operator Standard" and to "the Court's findings regarding the relevance of BPXA's SEC filings." (*Id*. at 13, 16.) But the contract here was not made part of BPXA's SEC filings; BPXA makes no filings with the SEC. Nor was the contract filed by the Trust with the SEC at BPXA's direction. The contract at issue was filed with the SEC by the Trust through its Trustee, not by any BP affiliate.

The Trust is a business trust, organized under the laws of Delaware in 1989, whose units are separately traded on the New York Stock Exchange. The Trust has no corporate affiliation to BP p.l.c. or BPXA. Rather, pursuant to the Overriding Royalty Conveyance—an agreement between BPXA and Standard Oil—BPXA granted Standard Oil the right to receive a royalty on certain production from the Prudhoe Bay oilfield, and Standard Oil then conveyed that royalty interest to the Trust. As Trustee, The Bank of New York ("BNY") runs the "business" of the Trust. To comply with the Trust's SEC reporting obligations, BNY may request, and BPXA is

DEFENDANT'S MOTION FOR
RECONSIDERATION -- 2

No. C08-1008 MJP

**GRAHAM & DUNN** PC
PIER 70, 2801 ALASKAN WAY ~ SUITE 300
SEATTLE, WASHINGTON  98121-1128
(206) 624-8300/Fax: (206) 340-9599

then contractually obligated to provide, information "not known or otherwise available to the Trustee concerning the Royalty Interest." (BP Prudhoe Bay Royalty Trust Agreement § 4.05.) But the content of the Trust's SEC filings, including the attachments to those filings, is determined by BNY—not BPXA.[1]  The Trust's SEC filings are not signed or certified by BPXA; they are signed and certified by BNY.  Where the Trust's SEC filings reflect information provided by BPXA, the filings expressly say so.  There is no suggestion in the Trust's SEC filings, nor any allegation in the Complaint, that the contract at issue was provided by BPXA to the Trust for purposes of including the contract with the Trust's SEC filing.

Furthermore, nowhere does BPXA represent—in the Trust's SEC filings or in its own public statements—that BPXA is complying with its contractual obligation under the Overriding Royalty Conveyance to operate Prudhoe Bay according to the Prudent Operator Standard.[2] Indeed, because the Overriding Royalty Conveyance is not material to BP p.l.c., there is no reference whatsoever to that contract in any of BP p.l.c.'s public filings and statements, much less a representation that BPXA is in continuing compliance with that contract.

---

[1] Contrary to the assertion of Plaintiffs' counsel at oral argument, BNY, in its capacity as Trustee of the Trust, has no role in the administration of BP p.l.c.'s ADRs.  Plaintiffs' counsel argued that BNY must have been speaking at the direction of BP p.l.c. because "[t]hese are ADRs, which means that the issuing company puts a bunch of shares figuratively and literally in the vault of the Bank of New York, and they are the trustee.  To think that they really have the discretion to make statements to the marketplace about what one of the largest companies in the world is doing in one of the largest oil fields is fanciful." (Oral Arg. Tr. at 27.)  Plaintiffs' argument is misplaced.  BNY's role here is as Trustee of the Trust—not as Administrator of BP p.l.c.'s ADRs.  BNY filed the contract at issue on behalf of the Trust.  And indeed, BNY's powers as Trustee are specifically delineated in the Trust Agreement as actions taken on behalf of, and in the interests of, the Trust and its unit holders. (*See* Trust Agreement, Art. VI.)  BP p.l.c. makes its own SEC filings; they are not made by BNY.

[2] As support for the statement that "Defendants represented that they were in compliance with Alaska's Prudent Operator Standard," the Order simply cites the definition of "Prudent Operator Standard" in the Overriding Royalty Conveyance. (Order at 6 & n.3.)

DEFENDANT'S MOTION FOR
RECONSIDERATION -- 3

No. C08-1008 MJP

**GRAHAM & DUNN** PC
PIER 70, 2801 ALASKAN WAY ~ SUITE 300
SEATTLE, WASHINGTON  98121-1128
(206) 624-8300/Fax: (206) 340-9599

The Trust attached the contract at issue to its SEC filings pursuant to Securities and Exchange Commission Item 601(b)(4) of Regulation S-K.  (*See*, *e.g.*, Index to Exhibits to BP Prudhoe Bay Royalty Trust, Annual Report (Form 10-K), at 16, 29, 43 (Mar. 31, 2005).)  That rule requires issuers to file as an exhibit to its reports all instruments defining the rights of the issuer's security holders.  *See* 17 C.F.R. § 229.601 (2009).  By filing the contract with the SEC pursuant to Item 601(b)(4), the Trust sought to disclose to its unit holders the nature and scope of their rights.  As a result, the only "statement" that can be attributed to the Trust's attachment of the contract to its SEC filings is a statement by the Trust to its unit holders defining their rights—not a statement by anyone to the shareholders of another issuer, namely, BP p.l.c.

Were BPXA itself to tout the existence of the Overriding Royalty Conveyance or to certify to the Trust for incorporation into the Trust's SEC filings that it is in ongoing compliance with the Prudent Operator Standard, it might be possible to find an actionable misstatement by BPXA to Trust unit holders.  But to consider the Trust's filing of the contract with its quarterly and annual filings an ongoing representation by BPXA would impose upon BP p.l.c. the impossible burden of combing the public filings of every counterparty to its thousands of contracts, no matter how immaterial to its business, because the public filing of any contract involving a BP affiliate could transform a subsequent breach of contract claim into an action for federal securities fraud.  That cannot be the law.  *See Raab* v. *General Physics Corp.*, 4 F.3d 286, 288 (4th Cir. 1993) ("The securities laws require General Physics [the issuer] to speak truthfully to investors; they do not require the company to police statements made by third parties for inaccuracies, even if the third party attributes the statement to General Physics.").

## II. BPXA'S ADMISSION OF NEGLIGENCE IS NOT SUFFICIENT TO ESTABLISH A STRONG INFERENCE OF SCIENTER.

In October 2007, BPXA agreed to plead guilty to a one-count information charging BPXA with a misdemeanor violation of the Clean Water Act for the "negligent discharge of a

DEFENDANT'S MOTION FOR
RECONSIDERATION -- 4

No. C08-1008 MJP

**GRAHAM & DUNN** PC
PIER 70, 2801 ALASKAN WAY ~ SUITE 300
SEATTLE, WASHINGTON  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1  harmful quantity of oil to a water of the United States." (Plea Agreement at 6.)  In finding that
2  Plaintiffs have adequately alleged scienter as to BPXA, the Order relied exclusively on excerpts
3  from two paragraphs of the Plea Agreement.  (*See* Order at 12-13.)  In those excerpts, the Plea
4  Agreement states that "'BPXA knew that the EOA OTL . . . had sediment collecting in the
5  pipe,'" that "'BPXA was aware of sediment build up on the EOA OTL prior to both spills,'" that
6  "'BPXA knew that it had insufficient inspection data on the EOA OTL,'" and that BPXA
7  "'failed to clean the OTLs with a piece of equipment called a maintenance (or cleaning) pig and
8  inspect the pipe for corrosion activity with a smart pig.'"  (*Id*. at 13 (quoting Plea Agreement at
9  10-11).)  In concluding that Plaintiffs had adequately alleged scienter based on the Plea
10  Agreement, the Order erred in two respects.

11  First, the Order overlooks the fundamental fact that BPXA's entire plea was predicated
12  on a mental state of negligence.  (Plea Agreement at 6.)  This fact alone should preclude the Plea
13  Agreement, by itself, from giving rise to the requisite strong inference of scienter.

14  Second, the Order erred in viewing the above-quoted sentences from the Plea Agreement
15  in isolation without considering the agreement as a whole.  In the Ninth Circuit, "recklessness
16  only satisfies scienter under § 10(b) to the extent that it reflects some degree of intentional or
17  knowing misconduct."  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 976-77 (9th Cir.
18  1999).  In addition, in assessing the sufficiency of scienter allegations, courts must consider *all*
19  factual allegations, including those that are exculpatory, and compare and weigh the strength of
20  potentially competing inferences, including competing nonculpable inferences.  *Tellabs, Inc.* v.
21  *Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007).  The Plea Agreement, read as a
22  whole, falls far short of establishing the high degree of recklessness necessary to plead scienter.

23  The Plea Agreement readily acknowledges that BPXA believed that its corrosion
24  monitoring and cleaning procedures were sufficient.  Immediately after the sentences of the Plea

DEFENDANT'S MOTION FOR
RECONSIDERATION -- 5

No. C08-1008 MJP

**GRAHAM & DUNN** PC
PIER 70, 2801 ALASKAN WAY ~ SUITE 300
SEATTLE, WASHINGTON  98121-1128
(206) 624-8300/Fax: (206) 340-9599

Agreement that the Order quotes, the Plea Agreement expressly states that "[t]he lines were not pigged because BPXA did not recognize the need to pig the oil transit lines more frequently." (Plea Agreement at 11.)  The Plea Agreement further recognized that (i) "BPXA believed that internal corrosion on the OTLs was a low probability" (*id.* at 10), and (ii) "BPXA believed that [its external ultrasonic meters]—augmented by a program of visual surveillance—would be reliable, would provide state-of-the art leak detection, would minimize false alarms, would surpass the regulatory requirements for leak detection thresholds, and would provide a rapid response in detecting large and small leaks" (*id*. at 12).  It is for these reasons that the Plea Agreement ultimately concludes that "BPXA acted negligently [not recklessly] by failing to adequately inspect and clean the OTLs."  (*Id*. at 8.)  Needless to say, such facts support an inference of negligence that is equally strong as, if not much stronger than, any competing inference of deliberately recklessness or intentional misconduct.  Accordingly, the Plea Agreement cannot support an inference of scienter, and Plaintiffs' § 10(b) claim against BPXA fails as a matter of law.

### III. CONCLUSION

For the foregoing reasons, Defendant BPXA respectfully requests that the Court reconsider its February 27, 2009 Order on Motion to Dismiss.

DATED this 3rd day of April, 2009

GRAHAM & DUNN PC

By /s/ David C. Lundsgaard
   David C. Lundsgaard, WSBA #25448
Pier 70 ~ 2801 Alaskan Way, Ste. 300
Seattle, WA  98121-1128
Tel:  (206) 624-8300
Fax:  (206) 340-9599
Email: dlundsgaard@grahamdunn.com

*Attorneys for Defendants*

DEFENDANT'S MOTION FOR
RECONSIDERATION -- 6

No. C08-1008 MJP

**GRAHAM & DUNN** PC
PIER 70, 2801 ALASKAN WAY ~ SUITE 300
SEATTLE, WASHINGTON  98121-1128
(206) 624-8300/Fax: (206) 340-9599

# CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Thomas A. Dubbs | tdubbs@labaton.com |
| Alan I. Ellman | aellman@labaton.com |
| Javier Bleichmar | jbleichmar@labaton.com |
| Jonathan Gardner | jgardner@labaton.com |
| Peter A. Binkow | pbinkow@glancylaw.com |
| Neal A. Dublinsky | ndublinsky@glancylaw.com |
| William F. Salle | wfslaw@yahoo.com |
| Robert D. Stewart | stewart@kiplinglawgroup.com |
| Timothy M. Moran | moran@kiplinglawgroup.com |
| Richard C. Pepperman, II | peppermanr@sdullcrom.com |
| Steven J. Purcell | purcells@sullcrom.com |
| John L. Warden | wardenj@sullcrom.com |
| Elizabeth Kayla Ehrlich | ehrlich@sullcrom.com |
| Gerald L. Black, Jr. | blackg@sullcrom.com |
| Diane L. McGimsey | mcgimseyd@sullcrom.com |

Dated: April 3, 2009

GRAHAM & DUNN PC

By /s/ David C. Lundsgaard
David C. Lundsgaard
WSBA# 25448
Email: dlundsgaard@grahamdunn.com
Attorneys for Defendants

DEFENDANT'S MOTION FOR
RECONSIDERATION -- 7

No. C08-1008 MJP

**GRAHAM & DUNN** PC
PIER 70, 2801 ALASKAN WAY ~ SUITE 300
SEATTLE, WASHINGTON  98121-1128
(206) 624-8300/Fax: (206) 340-9599