The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CLAUDE A. REESE, Individually and
on Behalf of All Others Similarly Situated,

                              Plaintiff,

    v.

JOHN BROWNE and ROBERT A. MALONE,

                           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 08-1008 MJP

**DEFENDANT BPXA'S MOTION FOR
INTERLOCUTORY APPEAL
PURSUANT TO 28 U.S.C. § 1292(B).**

Note for Motion Calendar:  April 24, 2009

ORAL ARGUMENT REQUESTED

John L. Warden
Richard C. Pepperman, II
Steven J. Purcell
Diane L. McGimsey
Gerald L. Black, Jr.
Elizabeth K. Ehrlich
(Admitted *Pro Hac Vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000 (tel.)
(212) 558-3588 (fax)

David C. Lundsgaard, WSBA #25448
GRAHAM & DUNN PC
Pier 70
2801 Alaskan Way, Suite 300
Seattle, Washington  98121
(206) 340-9691 (tel.)
(206) 340-9599 (fax)

*Attorneys for Defendants*

DEFENDANT BPXA'S MOTION
FOR INTERLOCUTORY APPEAL
PURSUANT TO 28 U.S.C. § 1292(B)

**GRAHAM & DUNN** PC
PIER 70, 2801 ALASKAN WAY ~ SUITE 300
SEATTLE, WASHINGTON  98121-1128
(206) 624-8300/Fax: (206) 340-9599

No. 08-1008 MJP

Defendant BP Exploration (Alaska) Inc. ("BPXA") respectfully moves for certification of the Court's Order on Motion to Dismiss dated February 27, 2009 for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## I.   INTRODUCTION

On February 27, 2009, this Court granted in part and denied in part Defendants' motion to dismiss, allowing Plaintiffs' claim under § 10(b) to proceed against BPXA and their § 20(a) "control person" claim to proceed against BP p.l.c., John Browne, Steve Marshall and Maureen L. Johnson.  The Court's Order presents two important controlling questions of law that are issues of first impression in the Ninth Circuit, either of which is potentially dispositive of this case:

1.   Whether a third party's inclusion of a contract as an attachment to its SEC filings, without more, is tantamount to a representation by a counterparty to the contract that it is in compliance with the contract.

2.   Whether a party's admission to negligence as part of a misdemeanor guilty plea, without more, is sufficient to establish the requisite strong inference of scienter.

In upholding Plaintiffs' § 10(b) claim against BPXA, the Court held that Plaintiffs have adequately alleged only one actionable misrepresentation or omission.  The Court concluded that the attachment of a contract called the Overriding Royalty Conveyance to the periodic SEC filings of the BP Prudhoe Bay Royalty Trust (the "Trust") constituted an ongoing representation by BPXA that it was complying with its obligation under that contract to operate Prudhoe Bay according to a "Prudent Operator Standard."  In accepting Plaintiffs' assertion that the attachment of this contract to the Trust's SEC filings constituted a representation by BPXA to BP p.l.c. shareholders, the Court may have overlooked certain facts:

• The SEC filings in question are those of the Trust, not BPXA.  The Bank of New York as Trustee, not BPXA, prepares the Trust's SEC filings.  The Trust attached the contract to its SEC filings pursuant to an SEC regulation requiring that instruments defining the

DEFENDANT BPXA'S MOTION
FOR INTERLOCUTORY APPEAL
PURSUANT TO 28 U.S.C. § 1292(B) -- 1

No. C08-1008 MJP

**GRAHAM & DUNN** PC
PIER 70, 2801 ALASKAN WAY ~ SUITE 300
SEATTLE, WASHINGTON  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1    rights of the issuer's security holders be filed as exhibits.  The security holders in
2    question are the Trust's unit holders.

3    •    The Trust's SEC filings are not a statement by anyone to BP p.l.c shareholders about
4    their rights or BP p.l.c.'s business.  BP p.l.c. makes its own SEC filings and is required to
5    attach as exhibits to those filings both its material contracts and instruments defining its
     shareholders' rights.  BP p.l.c. never filed the Overriding Royalty Conveyance as an
     exhibit pursuant to either requirement because the contract is not material to BP p.l.c.'s
     business and does not have any bearing on the rights of BP p.l.c.'s shareholders.

6    •    The attachment of the Overriding Royalty Conveyance, a contract executed in 1989, to
7    the Trust's SEC filings is not a statement by anyone that BPXA has fully performed all of
8    its obligations under that contract over the succeeding two decades.  It is simply a
     statement of what those obligations are.  As with any contract, a breach may occur, and if
9    it does, appropriate remedies may be sought in law and equity if necessary.  Here, the
     Trustee has asserted a claim of breach against BPXA, and a settlement in principle has
10   been reached and is now being documented.

11        Given that the contract at issue was filed by a third party, not BPXA, the Court's Order

12   potentially has far-reaching consequences.  In fact, the practical effect of the Court's ruling is to

13   impose an ongoing obligation on BP p.l.c. to police the public filings of the counterparty to each

14   of its hundreds, if not thousands, of contracts because the public filing of such a contract could

15   be considered an ongoing representation of compliance by BP p.l.c. or one of its affiliates that

16   would transform any breach of contract claim into an action for federal securities fraud.

17        The Court also held that Plaintiffs have adequately alleged that BPXA acted with

18   scienter, based entirely on BPXA's agreement to plead guilty to a single misdemeanor violation

19   of the Clean Water Act.  That Plea Agreement, however, was predicated on a mental state of

20   negligence.  Indeed, the Plea Agreement expressly states that "BPXA acted *negligently* by failing

21   to adequately inspect and clean" the Prudhoe Bay oil transit lines ("OTLs").  (Plea Agreement at

22   8 (emphasis added).)  No controlling authority of which we are aware has held that a guilty plea

23   based on negligent conduct is sufficient to establish scienter for purposes of § 10(b) liability.

24   The law in the Ninth Circuit is clear that "[n]egligence, even gross negligence, does not rise to

25
26   DEFENDANT BPXA'S MOTION                         **GRAHAM & DUNN** PC
     FOR INTERLOCUTORY APPEAL                        PIER 70, 2801 ALASKAN WAY ~ SUITE 300
27   PURSUANT TO 28 U.S.C. § 1292(B) -- 2            SEATTLE, WASHINGTON  98121-1128
                                                     (206) 624-8300/Fax: (206) 340-9599

     No. C08-1008 MJP

the level of the nefarious mental state necessary to constitute securities fraud under the PSLRA." *DSAM Global Value Fund* v. *Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002).  In holding otherwise, the Order relied entirely on excerpts from two paragraphs of the Plea Agreement where BPXA admitted that it was aware of sediment buildup in the OTLs and that it knew that it had insufficient inspection data.  (Order at 12-13.)  The Order, however, does not consider other statements in the Plea Agreement that establish that BPXA acted only negligently.  Moreover, the Order does not provide any justification for departing from the Ninth Circuit's strict requirements for pleading scienter, which preclude an inference of scienter based on negligent conduct.

In the event the Court declines to grant BPXA's Motion for Reconsideration, filed concurrently herewith, or agrees to reconsider its Order but ultimately declines to dismiss Plaintiffs' claims, BPXA requests that the Court certify its Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  These issues are controlling questions of law on which there is no direct legal authority, and immediate appellate review would both accelerate the potential resolution of this case and provide guidance on important issues that have yet to be directly addressed by the Ninth Circuit or, for that matter, any other court.

## II.    ARGUMENT

BPXA requests that the Court certify the following questions for interlocutory appeal pursuant to § 1292(b):

1.    Whether a third party's inclusion of a contract as an attachment to its SEC filings, without more, is tantamount to a representation by a counterparty to the contract that it is in compliance with the contract.

2.    Whether a party's admission to negligence as part of a misdemeanor guilty plea, without more, is sufficient to establish the requisite strong inference of scienter.

DEFENDANT BPXA'S MOTION
FOR INTERLOCUTORY APPEAL
PURSUANT TO 28 U.S.C. § 1292(B) -- 3

No. C08-1008 MJP

**GRAHAM & DUNN** PC
PIER 70, 2801 ALASKAN WAY ~ SUITE 300
SEATTLE, WASHINGTON  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1    A district court may certify an order for interlocutory appeal if it (1) "involves a

2    controlling question of law," (2) "as to which there is substantial ground for difference of

3    opinion," and (3) "an immediate appeal from the order may materially advance the ultimate

4    termination of the litigation." 28 U.S.C. § 1292(b). The party requesting certification has the

5    burden of showing that "'exceptional circumstances justify a departure from the basic policy of

6    postponing appellate review until after the entry of a final judgment.'" *In re Cement Antitrust*

7    *Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982) (quoting *Coopers & Lybrand* v. *Livesay*, 437 U.S.

8    463, 475 (1978)), *aff'd*, 459 U.S. 1190 (1983). Such exceptional circumstances are present

9    where allowing an immediate appeal would avoid protracted and expensive litigation. *Id.* at

10   1026; *United States Rubber Co.* v. *Wright*, 359 F.2d 784, 795 (9th Cir. 1966). Once "the

11   statutory criteria are met," there is a "duty of the district court and of [the Court of Appeals] to

12   allow an immediate appeal to be taken." *Ahrenholz* v. *Bd. of Trs. of the Univ. of Ill.*, 219 F.3d

13   674, 677 (7th Cir. 2000). The two questions posed above easily satisfy the predicates for

14   certifying the Order for interlocutory appeal under § 1292(b).

15   **A.    BPXA Has Proposed Controlling Questions of Law for Certification.**

16       Both questions are pure issues of law that are controlling in this case. An issue is

17   "controlling" if "resolution of the issue on appeal could materially affect the outcome of

18   litigation in the district court" and is not "collateral to the basic issues" in the dispute. *In re*

19   *Cement Antitrust Litig.*, 673 F.2d at 1026-27. Although an issue need not be dispositive of the

20   lawsuit to be controlling, *United States* v. *Woodbury*, 263 F.2d 784, 787-88 (9th Cir. 1959), a

21   question of law is clearly "'controlling' if reversal of the district court's order would terminate

22   the action." *Klinghoffer* v. *S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990).

23       Here, a ruling in BPXA's favor on either question—whether Plaintiffs have adequately

24   alleged an actionable misrepresentation by BPXA or whether they have adequately alleged

25

26   DEFENDANT BPXA'S MOTION
     FOR INTERLOCUTORY APPEAL
27   PURSUANT TO 28 U.S.C. § 1292(B) -- 4

     No. C08-1008 MJP

**GRAHAM & DUNN** PC
PIER 70, 2801 ALASKAN WAY ~ SUITE 300
SEATTLE, WASHINGTON  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1    scienter—would terminate the litigation.  The Court based its ruling that Plaintiffs have

2    adequately alleged a misrepresentation by BPXA entirely on the fact that BNY attached a copy

3    of the Overriding Royalty Conveyance to the Trust's quarterly SEC filings.  (*See* Order at 7-12.)

4    If that ruling is wrong as a matter of law, then the case is over.  Likewise, BPXA's guilty plea

5    served as the only basis for the Court's ruling that Plaintiffs have adequately alleged that BPXA

6    acted with scienter.  (*See* Order at 12-13.)  If, as a matter of law, a guilty plea predicated entirely

7    on negligence is insufficient to allege scienter in the Ninth Circuit, then Plaintiff cannot state a

8    § 10(b) claim against BPXA, and the case is over.[1]

9         **B.    There Are Substantial Grounds for a Difference of Opinion.**

10        The absence of controlling authority can constitute a "substantial ground for a difference

11   of opinion."  *Gerdts* v. *Smithkline Beecham Corp.*, No. 04-3500, 2005 WL 1827865, at *3 (D.

12   Minn. July 29, 2005).  Here, the Court decided each of these questions without the benefit of any

13   Ninth Circuit or other federal authority directly on point.  Given the significance of these two

14   questions—and the stakes in this litigation—the Court should avail itself of this opportunity to

15   solicit the Ninth Circuit's views before allowing the case to proceed any further.

16        **1.    The Trust's filing of the contract with the SEC is not a representation
                  by any party that BPXA is complying with the contract.**

17        Plaintiffs allege that the Trust's attachment to its SEC filings of a 1989 contract between

18   The Standard Oil Company ("Standard Oil") and BPXA, whereby BPXA agreed, among many

19   other things, to operate Prudhoe Bay according to a so-called "Prudent Operator Standard,"

20   constituted an ongoing representation *by BPXA* that it was in fact complying with that standard.

21   (Compl. ¶¶ 134-136.)  The Court agreed, holding that "the filing of the agreement as a public

22

23   [1]    If BPXA prevails on either question presented, the remaining § 20(a) "control person" claims against
            BP p.l.c, John Browne, Maureen Johnson and Steve Marshall also would fail because they are
24          predicated on an underlying violation of § 10(b) by BPXA.

25

26   DEFENDANT BPXA'S MOTION                              **GRAHAM & DUNN** PC
     FOR INTERLOCUTORY APPEAL                            PIER 70, 2801 ALASKAN WAY ~ SUITE 300
27   PURSUANT TO 28 U.S.C. § 1292(B) -- 5                SEATTLE, WASHINGTON  98121-1128
                                                         (206) 624-8300/Fax: (206) 340-9599

     No. C08-1008 MJP

1   document in compliance with SEC requirements renders it a representation that investors may

2   rightly rely on." (Order at 7.)  But the Court's Order does not address why the *Trust's* decision

3   to attach a copy of the Overriding Royalty Conveyance to the *Trust's* SEC filings can be imputed

4   to *BPXA*.  The Order simply states that that "[t]he Court finds that the quarterly filings with the

5   Securities and Exchange Commission ('SEC') made in connection with BPXA's obligations

6   under the PBRT contract throughout the purported Class Period (which included documents

7   wherein Defendants represented that they were in compliance with Alaska's Prudent Operator

8   Standard), may be utilized by Plaintiffs as evidence of false or misleading statements upon which

9   any investor was permitted to rely." (Order at 6-7 (footnote omitted).)

10      "[O]nly those defendants who make a false or misleading statement" or those who are

11  "intricate[ly] involved in the preparation of the fraudulent statements" can be held liable under

12  § 10(b).  *In re Intern. Rectifier Corp. Sec. Litig.*, No. 07-02544, 2008 WL 4555794, at *10 (C.D.

13  Cal. May 23, 2008).  BPXA did not actually make a statement here because it did not file the

14  contract at issue.  Although the Trust's filing of the contract with the SEC may constitute a

15  representation *by the Trust* as to the existence and terms of the contract on which Trust unit

16  holders were entitled to rely, it does not transform the contract into an ongoing representation by

17  BPXA.  The Trust and BPXA are arm's-length parties.  The Trust's SEC filings are not signed or

18  certified by BPXA; they are signed and certified by BNY as Trustee.[2]  Although SEC rules may

19

20

21

22  [2]   If the Court wishes to view a copy of one of the Trust's actual SEC filings during the relevant time

23       period, the Trust's 2005 Form 10-K is available on-line at
         http://www.sec.gov/Archives/edgar/data/850033/000095015205002813/113059ae10vk.htm.  BPXA

24       is attaching a courtesy copy of the Form 10-K as Exhibit A to the Declaration of Diane L. McGimsey.

25

26  DEFENDANT BPXA'S MOTION                          **GRAHAM & DUNN** PC
    FOR INTERLOCUTORY APPEAL                         PIER 70, 2801 ALASKAN WAY ~ SUITE 300
27  PURSUANT TO 28 U.S.C. § 1292(B) -- 6             SEATTLE, WASHINGTON  98121-1128
                                                     (206) 624-8300/Fax: (206) 340-9599

    No. C08-1008 MJP

1   have required the Trust to file the contract as an attachment to its quarterly and annual reports,

2   BP p.l.c. was under no similar obligation.[3]

3        BPXA also was not involved—much less "intricately involved"—in the decision to

4   attach the contract to the Trust's SEC filings.  BPXA is contractually obligated to "provide to the

5   Trustee on a timely basis upon request such information not known or otherwise available to the

6   Trustee concerning the Royalty Interest . . . as shall be necessary to permit the Trustee to comply

7   with respect to the Trust with the reporting obligations of the Trust."  (BP Prudhoe Bay Royalty

8   Trust Agreement ("Trust Agreement") § 4.05, attached to the McGimsey Decl. as Exhibit B.)[4]

9   Consistent with this obligation under the Trust Agreement, BPXA provides information to the

10  Trustee to enable the Trust to comply with its reporting obligations.  But that does not change the

11  fact that neither BPXA nor BP p.l.c. speaks through the Trust's SEC filings.  BPXA did not

12  provide the contract at issue to the Trust for purposes of having the Trust file it with the SEC,

13  and BPXA did not have a role in preparing the Trust's SEC filings other than providing certain

14  specified information to the Trust.

15        Although we are not aware of any other court that has addressed the specific question

16  here—whether a third party's public filing of a contract can constitute an ongoing representation

17  of compliance by a party to the contract that did not make the contract public, much less invite

18  reliance on it—at least one other court has refused to extend § 10(b) liability in circumstances

19  analogous to those here.  In *Lattanzio* v. *Deloitte & Touche LLP*, 476 F.3d 147 (2d Cir. 2007),

20  plaintiff sought to hold Deloitte & Touche, the issuer's accountant, liable for misstatements in

21  _____

22  [3]   Additionally, it is questionable whether a reasonable investor would be entitled to rely on the public
       disclosure of a contract, executed by the parties almost 20 years prior, as a representation that either
       party is in full compliance with the contract.

23  [4]   BPXA is also attaching a courtesy copy of the Overriding Royalty Conveyance as Exhibit C to the
24      McGimsey Declaration.

25

26  DEFENDANT BPXA'S MOTION              **GRAHAM & DUNN** PC
    FOR INTERLOCUTORY APPEAL            PIER 70, 2801 ALASKAN WAY ~ SUITE 300
27  PURSUANT TO 28 U.S.C. § 1292(B) -- 7   SEATTLE, WASHINGTON  98121-1128
                                        (206) 624-8300/Fax: (206) 340-9599

    No. C08-1008 MJP

1   the issuer's quarterly SEC filings.  Although the filings did not attribute the statements to

2   Deloitte, plaintiffs argued that a federal regulation required Deloitte, as the issuer's accountant,

3   to review the quarterly filings and that therefore the issuer's investors would reasonably construe

4   Deloitte's failure to correct the misstatements "as its imprimatur."  *Id*. at 154-55.  In rejecting the

5   plaintiff's claim, the Second Circuit recognized that "a requirement that an issuer's accountant

6   review interim financial statements supports an understanding among the investing public that

7   such reviews are in fact conducted," but nonetheless held that the issuer's interim financial

8   statements could not be attributed to Deloitte because "[p]ublic understanding that an accountant

9   is at work behind the scenes does not create an exception to the requirement that an actionable

10  misstatement be made by the accountant."  *Id*. at 155.

11          Likewise here, although Trust unit holders may understand that BPXA has provided

12  certain information requested by the Trustee for incorporation into the Trust's SEC filings,

13  unless the Trust's filings specifically attribute the information to BPXA, BPXA has not made

14  any actionable misstatement.  *See*, *e.g.*, *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d

15  1142, 1152 n.3 (C.D. Cal. 2007).  Stated differently, were BPXA itself to tout the existence of

16  the Overriding Royalty Conveyance or to certify to the Trust for incorporation into the Trust's

17  SEC filings that it is in ongoing compliance with the Prudent Operator Standard, it might be

18  possible to find an actionable misstatement by BPXA to Trust unit holders.  But BPXA cannot

19  be deemed to have made an actionable misstatement to anyone, much less BP p.l.c. shareholders,

20

21

22

23

24

25

26  DEFENDANT BPXA'S MOTION
    FOR INTERLOCUTORY APPEAL
27  PURSUANT TO 28 U.S.C. § 1292(B) -- 8

**GRAHAM & DUNN** PC
PIER 70, 2801 ALASKAN WAY ~ SUITE 300
SEATTLE, WASHINGTON  98121-1128
(206) 624-8300/Fax: (206) 340-9599

No. C08-1008 MJP

1   simply because BNY included a copy of the Overriding Royalty Conveyance with the Trust's

2   SEC filings.[5]

3           **2.      An Admission of Negligence Is Not Sufficient to Establish a Strong
                     Inference of Scienter.**

4           On October 24, 2007, BPXA entered into a Plea Agreement with the United States

5   Department of Justice arising out of the March 2, 2006 oil spill at Prudhoe Bay.  BPXA agreed to

6   plead guilty to a one-count information charging BPXA with a misdemeanor violation of the

7   Clean Water Act for the "negligent discharge of a harmful quantity of oil to a water of the United

8   States." (Plea Agreement at 6.)  In finding that Plaintiffs have adequately alleged scienter as to

9   BPXA, the Order relied exclusively on excerpts from two paragraphs of the Plea Agreement.

10  (*See* Order at 12-13.)  In those excerpts, the Plea Agreement states that "'BPXA knew that the

11  EOA OTL . . . had sediment collecting in the pipe,'" that "'BPXA was aware of sediment build

12  up on the EOA OTL prior to both spills,'" that "'BPXA knew that it had insufficient inspection

13  data on the EOA OTL,'" and that BPXA "'failed to clean the OTLs with a piece of equipment

14  called a maintenance (or cleaning) pig and inspect the pipe for corrosion activity with a smart

15  pig.'"  (*Id*. at 13 (quoting the Plea Agreement at 10-11).)  In concluding that Plaintiffs had

16  adequately alleged scienter based on the Plea Agreement, the Order erred in two respects.

17          First, the Order overlooks the fact that BPXA's entire plea to a misdemeanor violation

18  was predicated on a mental state of negligence.  (Plea Agreement at 6 (listing elements of

19  misdemeanor violation of Clean Water Act as "(1) The defendant discharged oil from a point

20  source; (2) The amount of oil discharged was a quantity deemed to be harmful by federal

21

22  [5]   Although the Ninth Circuit applies the more fluid "substantial participation" test with respect to third
          party primary liability under §10(b), the ultimate limitations on liability are the same.  *See In re*
23        *Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 790, 800 (C.D. Cal. 2004) (auditor must
          substantially participate "in the creation, drafting, editing, or making of statements" to incur liability
24        under §10(b) and Rule 10b-5).

25

26  DEFENDANT BPXA'S MOTION                          **GRAHAM & DUNN** PC
    FOR INTERLOCUTORY APPEAL                        PIER 70, 2801 ALASKAN WAY ~ SUITE 300
27  PURSUANT TO 28 U.S.C. § 1292(B) -- 9            SEATTLE, WASHINGTON  98121-1128
                                                    (206) 624-8300/Fax: (206) 340-9599

    No. C08-1008 MJP

1   regulation; (3) The oil was discharged into waters of the United States; and (4) The discharge

2   was caused by the negligence of the defendant.").)  No other authority of which we are aware has

3   held that a guilty plea predicated on negligence is sufficient to establish scienter for purposes of

4   § 10(b) liability.  This fact alone should preclude the Plea Agreement, by itself, from giving rise

5   to the requisite strong inference of scienter.

6          Second, the Order erred in viewing the above-quoted sentences from the Plea Agreement

7   in isolation without considering the Plea Agreement as a whole.  In determining whether a

8   plaintiff has adequately alleged scienter, courts must consider *all* factual allegations, including

9   those that are exculpatory, and compare and weigh the strength of potentially competing

10  inferences, including competing nonculpable inferences.  *Tellabs, Inc.* v. *Makor Issues &*

11  *Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007).  After this "holistic" review is completed, "the

12  inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent

13  and compelling, thus strong in light of other explanations."  *Id*.  Here, the Plea Agreement, read

14  as a whole, supports an inference of negligence that is equally strong as, if not stronger than, any

15  competing inference of deliberately recklessness or intentional misconduct.

16         BPXA admits in the Plea Agreement that it was aware of sediment buildup in the OTLs

17  and that it knew that it had insufficient inspection data.  (Plea Agreement at 10-11.)  But the Plea

18  Agreement also acknowledges that BPXA believed that its corrosion monitoring and cleaning

19  procedures were sufficient.  In fact, immediately after the sentences of the Plea Agreement that

20  the Order quotes, the Plea Agreement states that "[t]he lines were not pigged because BPXA did

21  not recognize the need to pig the oil transit lines more frequently."  (*Id*. at 11.)  The Plea

22  Agreement further recognized that (i) "BPXA believed that internal corrosion on the OTLs was a

23  low probability" (*id.* at 10), and (ii) "BPXA believed that [its external ultrasonic meters]—

24  augmented by a program of visual surveillance—would be reliable, would provide state-of-the

25

26  DEFENDANT BPXA'S MOTION
    FOR INTERLOCUTORY APPEAL
27  PURSUANT TO 28 U.S.C. § 1292(B) -- 10

    No. C08-1008 MJP

**GRAHAM & DUNN** PC
PIER 70, 2801 ALASKAN WAY ~ SUITE 300
SEATTLE, WASHINGTON  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1  art leak detection, would minimize false alarms, would surpass the regulatory requirements for

2  leak detection thresholds, and would provide a rapid response in detecting large and small leaks"

3  (*id*. at 12).  It is for these reasons that Plea Agreement ultimately concludes that "BPXA acted

4  negligently [not recklessly] by failing to adequately inspect and clean the OTLs."  (*Id*. at 8.)

5       To plead scienter through allegations of recklessness, a plaintiff must do more than allege

6  carelessness, negligence, gross negligence or even ordinary recklessness.  Rather, the Ninth

7  Circuit has held that a plaintiff must "plead, in great detail, facts that constitute strong

8  circumstantial evidence of *deliberately* reckless or conscious misconduct."  *In re Silicon*

9  *Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999) (emphasis added).  BPXA's

10 admission to conduct constituting the negligent discharge of oil into waters of the United States

11 comes nowhere close to establishing that BPXA "acted with an intent to defraud, conscious

12 misconduct, or deliberate recklessness."  *DSAM Global Value Fund* v. *Altris Software*, 288 F.3d

13 385, 387 (9th Cir. 2002).

14       **C.     Review of the Proposed Issues May Materially Advance the Termination of
               the Litigation.**

15

16       Closely related to the "controlling question" prong of § 1292(b) is whether immediate

17 appellate review of an interlocutory order "may materially advance the ultimate termination of

18 the litigation."  *In re Cement Antitrust Litig.*, 673 F.2d at 1026.  In considering this prong of

19 § 1292(b), reversal by the appellate court should be assumed.  *Id*.  Here, there can be no serious

20 dispute that an immediate appeal "may materially advance the ultimate termination of the

21 litigation."  If the Ninth Circuit were to disagree with the Court's ruling on either issue, this

22 litigation would be terminated.  In a case where Plaintiffs' counsel has suggested possible

23 damages in the billions of dollars and where the parties undoubtedly will have to spend millions

24

25

26 DEFENDANT BPXA'S MOTION
   FOR INTERLOCUTORY APPEAL
27 PURSUANT TO 28 U.S.C. § 1292(B) -- 11

   No. C08-1008 MJP

**GRAHAM & DUNN** PC
PIER 70, 2801 ALASKAN WAY ~ SUITE 300
SEATTLE, WASHINGTON  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1  of dollars in discovery and experts before the case is ready for trial, interlocutory appellate

2  review of these threshold issues is even more appropriate.

3  **III.    CONCLUSION**

4        For the foregoing reasons, Defendant BPXA respectfully requests that the Court certify

5  the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

6        DATED this 3rd day of April, 2009.

7                  GRAHAM & DUNN PC

8                  By /s/ David C. Lundsgaard

9                  David C. Lundsgaard, WSBA #25448

                2801 Alaskan Way, Suite 300

10                  Seattle, WA 98121-1128

                Email:  dlundsgaard@grahamdunn.com

11

12                  *Attorneys for Defendants*

13

14

15

16

17

18

19

20

21

22

23

24

25

26  DEFENDANT BPXA'S MOTION
    FOR INTERLOCUTORY APPEAL

27  PURSUANT TO 28 U.S.C. § 1292(B) -- 12

    No. C08-1008 MJP

**GRAHAM & DUNN** PC
PIER 70, 2801 ALASKAN WAY ~ SUITE 300
SEATTLE, WASHINGTON  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2009, I electronically filed (1) Defendant BPXA's

Motion For Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(B) and (2) Declaration of Diane

L. McGimsey in Support of Motion to Certify Order of February 27, 2009 for Interlocutory

Appeal (with Exhibits) with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the following:

| | |
|---|---|
| Thomas A. Dubbs | tdubbs@labaton.com |
| Alan I. Ellman | aellman@labaton.com |
| Javier Bleichmar | jbleichmar@labaton.com |
| Jonathan Gardner | jgardner@labaton.com |
| Peter A. Binkow | pbinkow@glancylaw.com |
| Neal A. Dublinsky | ndublinsky@glancylaw.com |
| William F. Salle | wfslaw@yahoo.com |
| Robert D. Stewart | stewart@kiplinglawgroup.com |
| Timothy M. Moran | moran@kiplinglawgroup.com |
| Richard C. Pepperman, II | peppermanr@sdullcrom.com |
| Steven J. Purcell | purcells@sullcrom.com |
| John L. Warden | wardenj@sullcrom.com |
| Elizabeth Kayla Ehrlich | ehrlich@sullcrom.com |
| Gerald L. Black, Jr. | blackg@sullcrom.com |
| Diane L. McGimsey | mcgimseyd@sullcrom.com |

Dated:  April 3, 2009

GRAHAM & DUNN PC

By _/s/  David C. Lundsgaard_____
    David C. Lundsgaard
    WSBA# 25448
    Email:  dlundsgaard@grahamdunn.com
    Attorneys for Defendants

DEFENDANT BPXA'S MOTION
FOR INTERLOCUTORY APPEAL
PURSUANT TO 28 U.S.C. § 1292(B) -- 13

No. C08-1008 MJP

**GRAHAM & DUNN** PC
PIER 70, 2801 ALASKAN WAY ~ SUITE 300
SEATTLE, WASHINGTON  98121-1128
(206) 624-8300/Fax: (206) 340-9599