1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10 CLAUDE A REESE et al.,

11                     Plaintiffs,

12          v.

13 ROBERT A MALONE et al.,

14                     Defendants.

CASE NO. C08-1008 MJP

ORDER ON MOTION TO AMEND

15

16          THIS MATTER comes before the Court on Plaintiffs Claude Reese et al.'s Motion to

17 File a Third Amended Consolidated Class Action Complaint and to Substitute Lead Plaintiffs.

18 (Dkt. No. 217.) Having reviewed the Motion, Defendants' Response (Dkt. No. 222), and

19 Plaintiff's Reply (Dkt. No. 224), the Court hereby GRANTS the Motion to Amend in part and

20 REOPENS a modified lead plaintiff selection process as described below.

**Background**

22          This case comes before the Court on remand from the Ninth Circuit, which affirmed in

23 part and reversed in part this Court's dismissal (see Dkt. No. 191) of Plaintiffs' securities fraud

24 claims. (See Dkt. No. 194, 195.)

ORDER ON MOTION TO AMEND- 1

The statements and events at issue in this case took place largely in 2006, the year of two major oil leaks from BP pipelines in Prudhoe Bay, Alaska. The Ninth Circuit reinstated Plaintiffs' claims with respect to the following statements, largely on the basis that plaintiffs had adequately pled scienter:

1) a statement by Maureen Johnson, BP-Alaska Senior Vice President and Greater Prudhoe Bay Performance Unit Leader, on March 15, 2006 (two weeks after the first spill) regarding the "low manageable corrosion rate" from observations of the pipeline prior to the spill (see Dkt. No. 194 at 17–24)

2) statements by Dr. Johnson in March and May 2006 contrasting conditions at the Western Operating Area ("WOA") pipeline (where the first spill occurred) with conditions at the Eastern Operating Area pipeline (where the August spill would later occur) (see id. at 24–33)

3) statement in the 2005 Annual Report, issued on June 30, 2006, regarding BP management's "belie[f]" that it was in "compliance in all material respects with applicable environmental laws and regulations" (id. at 34–40)

The Ninth Circuit also affirmed this Court's dismissal of claims relating to statements by BP CEO John Browne regarding "world class corrosion monitoring and leak detection systems." (Id. at 33–34.) Plaintiffs did not appeal and thus abandoned claims regarding statements in the 2004 and 2005 Annual Reports about "environmental best practices." (Id. at 13 n.1.)

Plaintiffs now move to amend the complaint a second time by dropping claims whose dismissal was affirmed by the Ninth Circuit or which were abandoned on appeal, reinstating claims based on § 20(a) controlling person liability for primary violations by BP that the Ninth Circuit found actionable, and substituting lead plaintiffs for those who lost standing based on either this Court's original order or the Ninth Circuit opinion. (See Dkt. No. 217.) Plaintiffs' motion to amend for a second time was filed within the Court's deadline for amended pleadings. (See Dkt. No. 215.)

Defendants oppose the motion on the grounds that Plaintiffs abandoned their § 20(a) claim against Mr. Browne by not addressing it on appeal (or, in the alternative, that

1  "amendment" to preserve him as a defendant would be futile) and that Plaintiffs may not

2  substitute lead plaintiffs because the current Lead Plaintiffs have lacked standing for 28 months

3  and that allowing a substitution of lead plaintiffs would permit Plaintiffs' counsel to evade the

4  Private Securities Litigation Reform Act ("PSLRA") lead plaintiff selection process.

**Analysis**

6        I.      Legal Standard

7        In deciding a motion to amend that falls after the first amendment as a matter of course

8  but in accordance with the Court's scheduling order, the Court considers a number of factors,

9  including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by

10  amendments previously allowed, undue prejudice to opposing parties, harm to the movant if

11  leave is not granted, and futility of the amendment. Foman v. Davis, 371 U.S. 178, 182 (1962);

12  Martinez v. Newport Beach City, 125 F.3d 777, 785 (9th Cir. 1997). Generally the Court should

13  grant leave to amend liberally, but the Court may deny leave if amendment would be futile.

14  Gordon v. City of Oakland, 627 F.3d 1092, 1094 (9th Cir. 2010).

15        II.      Section 20(a) Claim Against Mr. Browne

16        Section 20(a) controlling person liability requires a plaintiff to prove that the defendant

17  exercised actual power or control over a primary violator of federal securities law. (See Order on

18  Mot. Dismiss, Dkt. No. 191 at 18 (citing Howard v. Everez Sys., 228 F.3d 1057, 1065 (9th Cir.

19  2000)).) This Court initially dismissed the § 20(a) claims because it concluded Plaintiffs failed to

20  state claims for primary securities law violations. (See Dkt. No. 191 at 18.) But while the Ninth

21  Circuit affirmed this Court's dismissal of primary claims based on statements of Mr. Browne's

22  (See Dkt. No. 194 at 33), it also reversed on one claim against BP for statements of belief in the

23  2005 Annual Report attributed not to a specific individual but to BP "[m]anagement" generally.

24

1  (Id. at 34–40; see also id. at 34 ["[W]e affirm only with respect to Browne on plaintiff's first

2  claim for relief for violation of § 10(b) and Rule 10b-5."]).

3        The Court agrees with Plaintiffs that they did not abandon their § 20(a) claims regarding

4  the Annual Report by only making passing reference to § 20(a) during the briefing on appeal.

5  Because this Court's dismissal of the § 20(a) claims was based entirely on the conclusion that

6  primary securities violations were not adequately pled, there was no need for Plaintiffs to argue

7  the § 20(a) claims should be reinstated separately from their arguments regarding the critical

8  missing element of those claims: a predicate securities violation. The § 20(a) claim against

9  survives not with respect to the statement by Mr. Browne that has been dismissed, but (at

10 minimum) with respect to statement attributed to "management" generally in the Annual Report.

11       Defendants argue in the alternative that the § 20(a) claims against Mr. Browne are futile

12 because the proposed Third Amended Complaint does not state facts sufficient to render

13 plausible the allegation that Mr. Browne controlled BP or BPXA through significant day-to-day

14 involvement in the operations of those companies. (Dkt. No. 222 at 11.) However, as Plaintiffs

15 note, the Ninth Circuit cases cited by Defendant concern the sufficiency of evidence at summary

16 judgment, not the pleadings stage, and as this Court has held, "Whether a defendant is a control

17 person is an intensely factual question, and a plaintiff will survive a motion to dismiss on

18 allegations that individual defendants, by virtue of their executive and managerial positions,

19 could and did control and influence the company." Swartz v. Deutsche Bank, No. C03-1252-

20 MJP, 2008 WL 1968948, at *19 (W.D. Wash. May 2, 2008) (citations omitted). The Third

21 Amended Complaint does precisely that. (See Dkt. No. 217-9 at 71–72.)

22       III.     Lead Plaintiffs and the PSLRA Lead Plaintiff Selection Process

23       This Court's initial Order dismissed the claims of most of the original Lead Plaintiffs in

24 this suit—institutional investors who (with one exception) invested solely in BP ordinary shares

1    traded on foreign exchanges—based on the then-recent Supreme Court decision in <u>Morrison v.</u>

2    <u>National Australia Bank</u>, 130 S.Ct. 2869, 2884 (2010), which held that only securities listed on

3    domestic exchanges and domestic transactions in other securities are subject to §10(b). (<u>See</u> Dkt.

4    No. 191 at 18–19.) The exception among the otherwise foreign-transacting Lead Plaintiffs,

5    Pipefitters Local Union #537 Trust Funds, also lost standing based on that Order because it

6    purchased BP ADRs (BP shares traded on domestic exchanges) prior to March 14, 2006, and the

7    Order dismissed claims based on statements in the earlier 2005 Annual Report regarding

8    "environmental best practices." (<u>See</u> Dkt. No. 191 at 13.) Plaintiffs did not appeal either aspect

9    of the Order, though there remained one named but non-lead Plaintiff to continue to prosecute

10   the case: individual investor Mr. Reese, who purchased 11 shares on May 26, 2006. (<u>See</u> Compl.,

11   Dkt. No. 218, Ex. 6 at 9.)

12         Plaintiffs now move to substitute Lead Plaintiffs to remedy these standing problems,

13   seeking to elevate Mr. Reese and add the Employees' Retirement System of the State of Rhode

14   Island ("ERSRI") as substitute Lead Plaintiffs.

15         Defendants argue the 28-month delay between Plaintiffs' Ninth Circuit opening brief in

16   August 2012 and the date of their Motion to Amend militates in favor of denying the request to

17   substitute Lead Plaintiffs. (<u>See</u> Dkt. No. 222 at 13–14.) In light of the intervening appeal to the

18   Ninth Circuit and the fact that the case will go forward with an individual investor regardless of

19   other standing problems, this delay is not dispositive. Defendants are not prejudiced in a legal

20   sense by a slight delay in fact discovery regarding the proposed Lead Plaintiffs, particularly

21   when one of the proposed Lead Plaintiffs has always been a named plaintiff and the Court has

22   the discretion to delay appointment of new institutional Lead Plaintiffs by re-opening the PSRLA

23

24

ORDER ON MOTION TO AMEND- 5

1  selection process. Even if there were negligence on the part of Plaintiffs' counsel for failure to

2  acknowledge this problem earlier, there is little sign of bad faith.

3  Defendants argue in the alternative that the Court should reopen the PRSLA selection

4  process pursuant to 15 U.S.C. § 78u-4(a)(3). (Dkt. No. 222 at 15.) Defendants are correct that

5  courts generally require at least a modified renewed PRSLA selection process upon withdrawal

6  of a lead plaintiff—even a case cited by Plaintiffs permitted applicants to move for appointment

7  as lead plaintiff during a 60-day window following the prior lead plaintiff's withdrawal. See In re

8  Initial Pub. Offering Sec. Litig., 214 F.R.D. 117, 120 (S.D.N.Y. 2002). The Court therefore

9  adopts this modified process and will consider motions for appointment by putative class

10  members claiming "most adequate" plaintiff status during the 60-day period following this

11  Order. Plaintiffs need not, however, follow the full notice requirements of 15 U.S.C. § 78u-

12  4(A)(3)(a) because those procedures were followed at the beginning of this action and they did

13  not result in a stampede of applicants. (See Dkt. No. 62-15.)

**Conclusion**

15  The Court GRANTS the Motion to Amend insofar as it retains Mr. Browne as a

16  defendant and in other respects not challenged by Defendants except it DENIES the Motion

17  insofar as it proposes to substitute Lead Plaintiffs without an opportunity for outside applicants

18  to move for appointment. The Court hereby OPENS a modified PSRLA selection process and

19  will consider motions from putative class members for appointment as Lead Plaintiff in the 60-

20  day window following this Order.

21

22  The clerk is ordered to provide copies of this order to all counsel.

23

24

ORDER ON MOTION TO AMEND- 6

1     Dated this 3rd day of April, 2015.

2

3

4     _____
      Marsha J. Pechman
5     Chief United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON MOTION TO AMEND- 7